IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-30177-SMY-4 |
| | ) |
| HOSSAM AHMED, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court for consideration of Defendant Hossam Ahmed's Petition for a Writ of *Coram Nobis* (Doc. 308). The Government filed a response (Doc. 312). Ahmed filed a reply (Doc. 322). For the following reasons, the petition is **DENIED**.

## Procedural Background

On October 22, 2014, Hossam Ahmed was charged by indictment with conspiracy to unlawfully acquire SNAP benefits, in violation of 18 U.S.C. §371 (Doc. 1). He pleaded guilty to that charge pursuant to a written plea agreement on April 28, 2015 (Doc. 94). On July 31, 2015, Ahmed was sentenced to a 3-year term of probation, with the first 30 days to be served on home confinement (Doc. 131). He did not appeal his conviction or sentence.

On November 29, 2018, Ahmed was convicted of bribery of a public servant in St. Charles County, Missouri in Case No. 1811-CR00088-01 (Doc. 312-4). Then, on November 12, 2019, Ahmed received a Notice to Appear before an Immigration Judge of the United States Department of Justice in Kansas City, Missouri. Removal was being sought under INA Sections 237(a)(2)(A)(ii) and (iii), claiming under subpart (ii) that Ahmed was removable for committing

two crimes of moral turpitude not arising out of a single scheme or plan and under subpart (iii) for the commission of an aggravated felony (Doc. 309-9).

The Immigration Court ultimately found that Ahmed was removable under 237(a)(2)(A)(ii) because his conviction in the Southern District of Illinois constituted one crime of moral turpitude, his second conviction in the State of Missouri constituted his second crime of moral turpitude, and the two crimes did not arise out of one common scheme or plan (Doc. 309-5). He was also found removable under 237(a)(2)(A)(iii) because his conviction in the Southern District of Illinois was an aggravated felony. *Id.* Ahmed's application for cancellation of removal was pretermitted as the immigration court found that he had been convicted of an aggravated felony, and his request for asylum relief was denied based upon his conviction of an aggravated felony. *Id.* Ahmed appealed to the Board of Immigration Appeals; that appeal was denied on June 28, 2021 (Doc. 309-6).

Ahmed petitioned the Eighth Circuit Court of Appeals to review the order of the Board of Immigration Appeals upholding the decision of the immigration judge denying his application for relief from removal under the Convention Against Torture (CAT). *Ahmed v. Garland*, 2022 WL 1482739 at *1 (8th Cir. 2022). He did not petition for review of the determination that his conviction was an "aggravated felony."[1] The Eighth Circuit Court of Appeals ultimately denied Ahmed's petition for review and all pending motions. *Id.*

Ahmed has now filed a Writ of *Coram Nobis*, seeking to vacate his conviction. He claims (1) his attorney was ineffective in having him plead guilty with the risk of being deported; (2) he

---

[1] The Eighth Circuit Court of Appeals would have had jurisdiction to determine whether Ahmed's particular offense constituted an aggravated felony if the issue had been raised before it. *See Fuentes v. Lynch*, 788 F.3d 1177, 1180 (9th Cir. 2015) citing *Barragan-Lopez v. Holder*, 705 F.3d 1112, 1114 (9th Cir. 2013) *and* 8 U.S.C. §1252(a)(2)(C).

could not seek relief earlier; and, (3) he is still in immigration detention awaiting removal.[2]

## Discussion

A writ of *coram nobis* is a means to collaterally attack a criminal conviction based on alleged errors of law or fact that affect the fundamental character of the conviction, including inadequate counsel. *Delhorno*, 915 F.3d at 452. The relief sought in such a writ is available only when a defendant is no longer in custody and can no longer take advantage of habeas corpus relief. *United States v. Bonansinga*, 855 F.2d 476, 478 (7th Cir. 1988); *Stanbridge v. Scott*, 791 F.3d 715, 720 n. 3 (7th Cir. 2015). A successful *coram nobis* petition must establish that: (1) the error alleged is "of the most fundamental character" as to render the criminal conviction "invalid"; (2) there are "sound reasons" for the defendant's "failure to seek earlier relief"; and (3) "the defendant continues to suffer from his conviction even though he is out of custody." *United States v. Wilkozek*, 822 F.3d 364, 368 (7th Cir. 2016). A fundamental error that invalidates a criminal proceeding is one that undermines the Court's confidence that the defendant is actually guilty. *Id.; see also Delhorno*, 915 F.3d at 452.

Here, relying on *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984), Ahmed argues that ineffective assistance of counsel warrants *coram nobis* relief in this case. To prevail under a *Strickland* analysis, Ahmed must show that his counsel's representation (1) fell below an objective standard of reasonableness and (2) that he was prejudiced as a result. *Lee v. United States*, 582 U.S. 357, 363 (2017) *citing Strickland*, 466 U.S. at 688.

Criminal defense attorneys must inform non-citizen clients of the risks of deportation

---

[2] Ahmed requests oral argument on his Petition. However, the Court can determine the issues raised based upon the affidavits, transcripts, and other documentary materials of evidentiary quality that have been presented. *See United States v. Delhorno*, 915 F.3d 449, 452 (7th Cir. 2019) *citing Untied States v. Fuller*, 86 F.3d 105, 107 (7th Cir. 1996). Accordingly, Ahmed's request for oral argument is **DENIED**.

arising from guilty pleas in order to provide effective counsel under the Sixth Amendment. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), *citing Hill v. Lockhart*, 474 U.S. 52, 62 (1985) ("It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.'"). Ahmed asserts that his counsel, Jay Kanzler, advised him that he would <u>not</u> be deported as a result of pleading guilty to the charged offense. (Doc. 309-1 at ¶9). Kanzler substantiates Ahmed's assertions and affirms that he never advised Ahmed the charged offense might be considered an aggravated felony or that he could face automatic deportation and be ineligible for cancellation of removal (Doc. 309-4 at ¶¶9, 12). As such, Kanzler's representation fell below an objective standard of reasonableness. That said, whether Ahmed was prejudiced as a result is a more difficult question.

To establish that he was prejudiced under *Strickland*, Ahmed must show both that he would have rejected his plea agreement and gone to trial and that he would likely have obtained a more favorable result in the end. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Padilla,* 559 U.S. at 372 (defendants must also show that to reject the plea bargain and go to trial would have been "rational under the circumstances"). In that vein, the Court "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Rather, the Court must look to contemporaneous evidence to substantiate the defendant's expressed preferences. *Id.*

Here, Ahmed was indicted under 18 U.S.C. §371 and 7 U.S.C. §2024(b) for conspiracy to acquire approximately $1,600,000 in SNAP benefits. And the evidence against Ahmed is strong: a conspiracy existed between all defendants to illegally pay cash for SNAP benefits; Ahmed knowingly became a member of that conspiracy with an intention to further that conspiracy

when he, on 2 separate occasions, paid cash for SNAP benefits to customers; an overt act was committed by at least one of the conspirators (even Ahmed himself) in furtherance of the conspiracy (Docs. 94, 309-1, 309-2). The fact that Ahmed was only responsible for two illegal transactions totaling $250.81 does not negate the fact that he acted as part of the greater charged conspiracy with the other defendants totaling approximately $1.6 million.

Ahmed admitted to understanding these charges against him and the elements to which he was pleading guilty:

> **THE COURT**: Have you received a copy of the indictment in this case?
> **MR. AHMED**: Yes, sir.
> **THE COURT**: And have you discussed with Ms. Brown and Mr. Kanzler the charge contained in the indictment to which you intend to plead guilty; that being Count 1, which is conspiracy to unlawfully acquire SNAP benefits. Have you discussed that with them?
> **MR. AHMED**: Yes, sir.
> **THE COURT**: So do you believe you understand what it is that you are pleading to?
> **MR. AHMED**: Yes, sir.
> **THE COURT**: Mr. Coonan, can you please explain the essential elements of the offense to which Mr. Ahmed intends to plead guilty.
> Mr. Ahmed, please listen to Mr. Coonan and I'm going to ask you some questions in a moment about what he has to say.
> **MR. COONAN**: Yes, your Honor.
> The defendant's charged only in Count 1 with a conspiracy to unlawfully acquire food stamps in violation of United States Code Section 271. The elements would be these, your Honor: First, that the conspiracy as charged in Count 1 existed; second, that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy; and finally, third, your Honor, that an overt act was committed by at least one conspirator in furtherance of the conspiracy.
> **THE COURT**: Okay. Mr. Ahmed, do you understand these three essential elements of the charge of conspiracy to unlawfully acquire food stamps?
> **MR. AHMED**: Yes, sir.

(Doc. 309-3 at pp. 17-18).

Ahmed also admitted to the stipulation of facts and his guilt:

> **THE COURT**: Mr. Ahmed, do you agree with the government's summary of what you did as contained in this stipulation of facts?
> **MR. AHMED**: Yes.

> **THE COURT**: Did you do what the government says you did in this stipulation of facts?
> **MR. AHMED**: Yes, sir.
> **THE COURT**: I only have a few more questions for you, Mr. Ahmed. Do you still wish to plead guilty at this time?
> **MR. AHMED**: Yes, sir.
> **THE COURT**: Is everything contained in the stipulation of facts true and correct to the best of your knowledge and belief?
> **MR. AHMED**: True.
> **THE COURT**: If I could have the stipulation of facts. Mr. Ahmed, are you pleading guilty because you are guilty?
> **MR. AHMED**: Yes, sir.

(Doc. 309-3 at pp. 31-32).

Ahmed's blanket statements and *post hac* assertions that he would have insisted that his attorney negotiate an alternate resolution that would not render him automatically removable, or he would have proceeded to trial, are inconsistent with the contemporaneous evidence; both of the underlying offense and the bases for his guilty plea. Ahmed has exhausted every other option he has to avoid deportation, so his attempt undo his guilty plea here is understandable. But his claim that he would have insisted his attorney negotiate an alternative resolution that would not render him automatically removable cannot be substantiated.

Ahmed references two other defendants associated with the same stores who were charged with the unauthorized acquisition of food stamps in violation of 7 U.S.C. §2024(b) for a loss between $100 and $5,000.00 *See United States of America v. Rami M. Abou Amra*, Case No. 13-cr-30256-MJR and *United States of America v. Alaa K.A. Jaber*, Case No. 13-cr-30257-MJR. However, those defendants were not charged with a conspiracy totaling $1,600,000. Simply put, the experience of those defendants does not make it reasonably probable that Ahmed would have rejected his plea agreement and gone to trial and that he would likely have obtained a more favorable result in the end.

Moreover, Ahmed took no affirmative actions and made no affirmative statements at any

time during his plea proceedings, or any other time, indicating his deportation would affect his decision to plead guilty. To the contrary, the record demonstrates that Ahmed was in fact informed that there were a number of possible immigration consequences, including deportation, that could arise as a result of his guilty plea (Docs. 309-1 at ¶8; 309-3 at pp. 12-13, 14-15, 16, 26). In fact, during his change of plea hearing, a recess was even taken during which the United States of America and defense counsel added the following language to the Plea Agreement:

> "that the Defendant wants to plead guilty regardless of any immigration consequences that the plea may entail, even if the consequences is the Defendant's automatic removal from the United States."

(Doc. 97 at pp. 7-8).

Ahmed was specifically asked by the Court about the addition of this language, his understanding of the language, and whether he still intended to plead guilty; he answered in the affirmative (Doc. 309-3, pp. 14-16, 19, 21-22, 26). Based on the totality of this record, the Court finds that Ahmed has failed to satisfy the prejudice prong of the *Strickland* analysis.

Even if the Court were to find that Ahmed had established the requisite prejudice, his Petition would still fail due to the lack of sound reasons for delay in filing. Ahmed filed the instant petition seven years after he was sentenced. Prior to filing the Petition in this case, Ahmed did not file a direct appeal or any post-conviction petitions raising his claims for ineffective assistance of counsel. While he didn't receive a notice to appear before an immigration judge to address his removal until November 2019, Ahmed actively participated in the immigration proceedings, including filling a limited petition for review to the Eighth Circuit Court of Appeals which was denied in 2022. Ahmed had multiple opportunities to seek relief and offers no justification for failing to do so through less extraordinary channels. *See Delhorno*, 915 F.3d at 455. Thus, the Court finds that his seven-year delay addressing this issue was unreasonable and prevents the

granting of relief sought herein.

## Conclusion

For the foregoing reasons, Defendant Hossam Ahmed's Petition for a Writ of Coram Nobis (Doc. 308) is **DENIED**.

**IT IS SO ORDERED.**

DATED: August 5, 2025

**STACI M. YANDLE**
**United States District Judge**